**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| **DEBBIE M.[1]**, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 7:22-cv-00056** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff Debbie M. ("Debbie") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433; 42 U.S.C. §§ 1381-1383f. Debbie alleges that the ALJ did not properly analyze her mental impairments, physical impairments, or her subjective allegations about her condition. I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 18) and **DENYING** Debbie's Motion for Summary Judgment (Dkt. 14).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Debbie failed to demonstrate that she was disabled

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

under the Act.[2] <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); <u>see also</u> <u>Biestek v. Berryhill</u>, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (quoting <u>Craig v. Chater</u>, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).

## <u>CLAIM HISTORY</u>

Debbie filed for DIB and SSI in August 2019, claiming her disability began on June 1, 2019 due to no peripheral vision and blurred vision in both eyes, epilepsy, bipolar disorder, depression, panic disorder with panic attacks, racing heart rate, lesions on the brain which are under evaluation for possible multiple sclerosis, problems with gait and balance, pain in her back and neck, muscle spasms, asthma, and severe constipation. R. 282, 297, 316, 335. The state

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. <u>See</u> 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

agency denied Debbie's applications at the initial and reconsideration levels of administrative review. R. 281–310, 315–52. On May 12, 2021, ALJ David Lewandowski held a hearing to consider Debbie's claims for DIB and SSI. R. 225–52. Counsel represented Debbie at the hearing, which included testimony from vocational expert Ellen Levine. On July 27, 2021, the ALJ entered his decision analyzing Debbie's claims under the familiar five-step process[3] and denying her claims for benefits.[4] R. 11–28.

The ALJ found that Debbie suffered from the severe impairments of psychogenic non-epileptic seizures, migraines, loss of vision, left knee degenerative changes, carpal tunnel syndrome, anemia, Hepatitis C, cervical degenerative disc disease, asthma, obesity, major depressive disorder, generalized anxiety disorder, bipolar, and substance use disorder. R. 14. The ALJ found that Debbie was moderately limited in the broad functional areas of understanding, remembering, or applying information, interacting with others, and concentrating, persisting, or maintaining pace and mildly limited in the broad functional area of adapting or managing oneself. R. 16–17.

The ALJ determined that Debbie's mental and physical impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 14. The ALJ specifically considered listing 1.15 (disorders of the skeletal spine resulting in compromise of

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies.  42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[4] Debbie was 45 years old on her alleged onset date, making her a younger person under the Act. R. 26.

nerve root(s)), listing 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina), listing 1.17 (reconstructive surgery or surgical arthrodesis of a major weight-bearing joint), listing 1.18 (abnormality of a major joint(s) in any extremity), listing 1.19 (pathologic fractures due to any cause), listing 2.02 (impairment of visual acuity), listing 2.03 (contraction of visual fields), listing 3.03 (asthma), listing 11.02 (epilepsy), SSR 19-4p[5] (migraines), SSR 19-2p (obesity), listing 12.06 (anxiety and obsessive-compulsive disorders), and listing 12.08 (personality and impulse-control disorders).

The ALJ concluded that Debbie retained the residual functional capacity ("RFC") to perform light work. R. 18. Debbie can perform frequent handling, fingering, and feeling. Id. She can perform occasional postural activities but cannot climb ladders, ropes, or scaffolds. Id. Debbie should avoid concentrated exposure to cold temperatures and pulmonary irritants and should avoid all exposure to industrial hazards. Id. She cannot perform jobs that require peripheral vision. Id. Debbie is limited to performing simple, unskilled tasks. Id. She can occasionally interact with others in the workplace. Id. Debbie will be off task about 10% of the workday and will be absent up to one day per month. Id. The ALJ determined that Debbie did not have past relevant work but could perform jobs that exist in significant numbers in the national economy, such as small parts assembler, inspector and hand packer, and shipping and receiving weigher. R. 26–27. Thus, the ALJ determined that Debbie was not disabled. R. 27. Debbie appealed the ALJ's decision, and the Appeals Council denied her request for review on December 16, 2021. R. 1–4.

---

[5] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1).  Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

## ANALYSIS

Debbie alleges that the ALJ did not properly analyze her mental impairments, physical impairments, or her subjective allegations about her condition.

### A. Medical History Overview

1. Medical Treatment[6]

Debbie has a history of panic disorder, major depressive disorder, insomnia due to mental disorder, unspecified psychophysiological malfunction, and cannabis use disorder. R. 1055, 1127, 2189, 3228. Doctors prescribed several medications for her mental health, including Paxil, Klonopin, and Ambien. R. 1056, 1127. By February 2020, Debbie's psychiatrist found that her major depressive disorder was in remission. Id. Debbie's doctors found that she had circumstantial thoughts and affected mood, R. 1055, 1127, but her symptoms seemed to improve after an increase in her medication dosages. R. 1127, 1399, 2188. In September 2020, Debbie's psychiatrist noted that given Debbie's "history of multiple positive urine drug screens and continued cannabis use," he would likely not continue to prescribe Ambien and Klonopin for Debbie. R. 3225, 3228.

Debbie also has a history of seizures and headaches, which predate the alleged onset date. She had a brain MRI in July 2019 that showed a new left posterior frontal white matter non-enhancing lesion. R. 2351. However, Debbie's doctor concluded that the lesion did not suggest active disease. Id. Throughout the relevant period, Debbie presented to the emergency department at several different hospitals with complaints of headaches or bodily injuries

---

[6] Debbie cites to additional medical evidence in her brief that was submitted to the Appeals Council. Pl.'s Br. at 39–43, Dkt. 15. However, the Appeals Council did not exhibit this additional evidence and stated the majority of the evidence did not relate to the time period at issue. R. 2. The Appeals Council found that the evidence that was related to the time period at issue did "not show a reasonable probability that it would change the outcome" of the ALJ's decision. Id. Debbie does not make an argument in her brief that the additional evidence should have been considered. Accordingly, I do not consider the additional evidence submitted to the Appeals Council.

following her seizures. R. 1069, 1389, 2686. Debbie took unprescribed "marijuana drops" for her seizures but was not prescribed any medication. R. 2714.

Debbie had carpal tunnel release surgery on her right hand in January 2019, prior to her alleged onset date. R. 644–45. She reported doing well after the surgery and had minimal hand soreness. R. 628. Debbie had carpal tunnel release surgery on her left hand in November 2019. R. 1145. She reported doing well after her left carpal tunnel release surgery and had good range of motion.[7] R. 1138, 1145. Debbie briefly attended occupational therapy sessions in 2020 for decreased strength and numbness in her wrists and hands. R. 2561. However, she was discharged in January 2021 after attending two sessions and cancelling or failing to appear for nine other visits. R. 2544.

2.   Medical Opinions

Debbie was previously denied disability benefits for the period of October 22, 2015 through July 30, 2018. R. 256–74. The ALJ gave no weight to the prior decision from 2018 and reasoned that "[i]t was issued three years ago, and the current evidence shows [Debbie] is now more limited physically and mentally." R. 25.

In March 2020 and July 2020, respectively, state agency physicians Bert Spetzler, M.D. and Robert McGuffin, M.D., reviewed the record and found that Debbie could occasionally lift and carry 20 pounds and could frequently lift and carry 10 pounds. Dkt. 290, 305, 327–28, 46– 47. Drs. Spetzler and McGuffin also concluded that Debbie could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl but should never climb ladders, ropes, or scaffolds. Id. Drs. Spetzler and McGuffin found that Debbie had no manipulative limitations. Id. The ALJ

---

[7] Debbie has several other health issues, including visual impairments, Hepatitis C, abdominal pain, cervical spine degenerative disc disease, degenerative joint disease/knee pain, obesity, and asthma. However, Debbie does not take issue with the ALJ's evaluation of any of these health problems. As such, I have not included a summary of that medical evidence.

found these opinions partially persuasive. R. 25. The ALJ reasoned that Debbie could perform only frequent manipulative activities because of any residual issues from Debbie's carpal tunnel syndrome. Id.

In March 2020 and July 2020, respectively, state agency psychiatrists Howard Leizer, Ph.D. and Louis Perrott, Ph.D., reviewed the record and found that Debbie had moderate limitations in concentration, persistence, or pace, mild limitations in interacting with others, and no limitations in understanding, remembering, or applying information and adapting or managing oneself. R. 288, 303, 326, 345. Dr. Leizer also concluded that Debbie would "have the capacity to maintain persistence and pace for 2 hour periods as typically required in a normal workday" but that her history of anxiety and panic disorder may impact her ability to work with the public. R. 292–93, 307–08. Dr. Perrott concluded the same. R. 330–31, 349–50. The ALJ found these opinions partially persuasive. R. 25. The ALJ noted that additional limitations were needed. R. 26. The ALJ reasoned that "[b]ecause [Debbie] might experience some distraction from her mental impairments, especially her psychogenic seizures, she might be off task up to 10% of the workday and absent once per month." Id. The ALJ further reasoned that Debbie "does not need greater limitations in these areas because she only sought treatment for her seizure like activity a few times a year at most, less than once per month on average." Id.

**B.  Mental Impairments under SSR 96-8P**

Debbie argues that the ALJ failed to properly assess her mental impairments as required by SSR 96-8P. See Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996). Specifically, Debbie asserts that the ALJ failed to explain how his RFC findings account for Debbie's moderate limitations in concentration, persistence, or pace and in interacting with others. Pl.'s Br. at 45, Dkt. 15. Debbie further argues that because

the ALJ did not consider her moderate limitations, the ALJ failed to ask the vocational expert proper hypothetical questions. Id. at 46–47. Debbie also argues that the ALJ did not address her ability to sustain work. Id. 46, 48–49.

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-2767, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011).  The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe, 826 F.3d at 189 (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

In Shinaberry v. Saul, the Fourth Circuit clarifies that an "ALJ cannot summarily 'account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work,' because 'the ability to perform simple tasks differs from the ability to stay on task.'" Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020) (quoting Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015)). However, Mascio does "not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." Id. In contrast, Shinaberry highlights "sister circuits" who conclude that "limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations [in concentration, persistence, or

8

pace]" when the "medical evidence demonstrates that a claimant can engage in simple, routine tasks, or unskilled work, despite [these] limitations." Id. (quoting  Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). Shinaberry further confirms that Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC, but instead underscores the ALJ's duty to adequately review the evidence and explain the decision. See also Monroe, 826 F.3d 176 (emphasizing that the ALJ must provide a sound basis for his ruling, including discussing what evidence he found credible and specifically applying the law to the record).

Here, the ALJ explained why Debbie's moderate limitations in concentration, persistence, or pace and in interacting with others did not translate into a limitation in the RFC beyond that imposed. As it relates to concentration, persistence, or pace, the ALJ specifically acknowledged that Debbie complained to her treating practitioners of difficulty concentrating and had circumstantial thought process. R. 17, 24. However, the ALJ noted that "[m]ental status examinations show [Debbie] had normal concentration" and that treating practitioners "did not observe that [Debbie] was overly distractible or slow." R. 17. The ALJ also noted that Debbie "reported doing a variety of daily tasks that require some concentration, persistence, and pace[,]" such as traveling out of state and caring for family members. Id. Contrary to Debbie's argument, the ALJ explained his reasoning and the RFC, including specific references to the medical records and opinions. The ALJ explained that Debbie's moderate limitations in concentration, persistence, or pace were accommodated with a restriction to simple, unskilled tasks and a 10% off task rate.[8] R. 17–18.

_____

[8] Debbie argues that the ALJ made vague and conclusory statements regarding her RFC and particularly takes issue with the ALJ's conclusion that Debbie would be off task 10% of the workday and absent one day per month. Pl.'s Br. at 46, Dkt. 15. I disagree with Debbie. The ALJ cited substantial evidence of record to support his conclusions regarding Debbie's ability to stay on task. An ALJ's "lack of precision is not a reason to reverse the

As it relates to interacting with others, the ALJ specifically acknowledged that Debbie "sometimes reported [an] irritable mood and anxiety, which could be worse with frequent interaction with strangers." R. 16. However, the ALJ noted that treating practitioners "did not observe [Debbie] to have serious deficiencies in eye contact, speech, or conversation" and that Debbie "did not complain of serious problems with interpersonal interaction to treating practitioners." Id. The ALJ also noted that Debbie "went out in public and traveled" and "lived with family without serious problems." Id. Contrary to Debbie's argument, the ALJ explained his reasoning and the RFC, including specific references to the medical records and opinions. The ALJ explained that Debbie's moderate limitation in interacting with others was accommodated with a restriction to only occasional interaction with others.[9] R. 17.

Debbie further asserts that because the ALJ did not consider her moderate limitations in concentration, persistence, or pace and in interacting with others, the ALJ failed to "pose any hypothetical questions to the vocational expert that included these limitations." Pl.'s Br. at 46,

---

decision. The important point is that the [ALJ] did not find any evidence to show that plaintiff's ability to stay on task was impaired to the extent that it would keep [her] from working." Jordan v. Social Sec. Admin., No. 17-cv-03032-JMC, 2018 WL 4354196, at *3 (D. Md. Sept. 12, 2018) (internal quotation marks omitted). Here, the ALJ found that because Debbie "might experience some distraction from her mental impairments, especially her psychogenic seizures, she might be off task up to 10% of the workday and absent once per month." R. 26. The ALJ reasoned that Debbie does not need greater limitations because she did not regularly seek treatment for her seizures and "was fairly active, which included driving, walking for exercise every day, and taking care of various family members, suggesting her symptoms were not as bad as she alleged." Id. Further, the ALJ did not find that Debbie's ability to stay on task was impaired to the extent that she could not work. I find that the ALJ provided an adequate narrative discussion explaining and supporting his conclusions and that the evidence supports his RFC determination.

[9] Debbie argues that the ALJ failed to address her ability to sustain work over an eight-hour day and failed to explain how her "ability to travel out of town and perform daily tasks show she can perform tasks on a sustained basis." Pl.'s Br. at 46, 48, Dkt. 15. The purpose of the RFC is to assess "an individual's ability to do sustained work-related physical and metal activities in a work setting on a regular and continuing basis" meaning "8 hours a day, for 5 days a week, or an equivalent work schedule." See 20 C.F.R. §§ 404.1545(b); SSR 96-8, 1996 WL 374184, at *1-2. Here, the ALJ determined that Debbie could perform sustained work activities in an ordinary work setting on a regular and continuing basis with certain limitations and accommodations. The ALJ provided a narrative discussion explaining his conclusions and the evidence supporting the RFC determination.

Dkt. 15. At the hearing, the ALJ asked the vocational expert, Ellen Levine, the following

question:

> What I'd like you to do is assume an individual of the Claimant's age, education, and work experience who's capable of performing light exertional work with occasional postural activities, but no ladder, rope, or scaffold climbing. The individual can frequently perform handling, fingering, and feeling, and should avoid concentrated exposure to cold temperatures, pulmonary irritants, and should avoid exposure to industrial hazards. The individual has no peripheral vision and is able to perform simple, unskilled tasks. The individual can occasionally interact with others. Would this individual be able to perform the Claimant's past work? . . . Are there other jobs in the national economy this individual could perform?

R. 250. "In order for a vocational expert's opinion to be relevant or helpful, it must be based

upon a consideration of all other evidence in the record, and it must be in response to proper

hypothetical questions which fairly set out all of claimant's impairments." Walker v. Bowen, 889

F.2d 47, 50 (4th Cir. 1989) (internal citations omitted). Here, the ALJ based his hypothetical on

the evidence in the record. As discussed, the ALJ acknowledged that the record indicated that

Debbie had difficulty with concentration, persistence, or pace and with interacting with others.

Those limitations were addressed in the ALJ's hypothetical when asking for jobs that had simple,

unskilled tasks and had only occasional interaction with others. The ALJ's hypothetical

limitations were supported by the record and considered Debbie's impairments.

Debbie's assertion that the ALJ did not explain how the RFC findings address or

accommodate her moderate limitations with concentration, persistence, or pace and with

interacting with others is unfounded. The ALJ provided a lengthy narrative discussion of

Debbie's allegations, treatment records, and opinion evidence regarding her mental health

limitations. The ALJ considered Debbie's allegations of difficulty being around people and with

concentration, persistence, and pace at length in his opinion. The ALJ explained how his RFC is

supported by Debbie's mental health treatment records and carefully analyzed each facet of her

mental health impairments. Accordingly, I find that the ALJ's assessment of Debbie's impairments was sufficient under SSR 96-8P.

### C.  Function-by-Function Analysis

Debbie argues that the ALJ's opinion "failed to conduct a function by function analysis[.]" Pl.'s Br. at 55, Dkt. 15. Debbie further argues that the ALJ never made specific findings on whether Debbie could sustain work or would need to take breaks during the day and whether Debbie's physical impairments would result in absences from work. Id. at 52, 55. Debbie argues that the ALJ never explained how he considered the frequency of Debbie's seizures or migraines in arriving at his RFC. Id. at 52. Debbie also argues that the ALJ "ignored significant evidence documenting [Debbie's] ongoing [issues with her] upper extremities and his conclusion her symptoms resolved following the carpal tunnel surgeries is not supported by substantial evidence." Id. at 54. Finally, Debbie argues that "[i]t is unclear exactly how persuasive the ALJ determined the opinions of the state agency physicians were in his decision." Id.

A function-by-function analysis requires the ALJ to develop an adequate RFC which accounts for the work activities the claimant can perform given the physical or mental impairments affecting his ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See SSR 96-8p; see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that an ALJ needs to provide an explicit explanation linking medical evidence listed in the decision to his ultimate findings). The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of

each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p, 1996 WL 374184, at *7.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D.W. Va. Apr. 29, 2015).

Here, the ALJ's decision includes the narrative discussion required by SSR 96-8p and contains sufficient information to allow meaningful review. Unlike in Mascio, the court is "not left to guess about how the ALJ arrived at his conclusion" because the ALJ's findings include a comprehensive analysis of Debbie's medical records, the medical opinions, and the ALJ's conclusion. The ALJ explains how the limitations in the RFC correlate with Debbie's severe physical impairments. Specifically acknowledging Debbie's seizures and headaches, the ALJ noted that the light levels of exertion and expected off-task behavior and absenteeism accommodate these issues. [10] R. 21. Further, the ALJ found that while Debbie testified that she

---

[10] Debbie alleges that the ALJ "found [Debbie] would be off task 10% of the workday and absent up to one day per month without explaining how [he] considered the frequency of [Debbie's] seizures or migraines in arriving at the RFC." Pl.'s Br. at 52, Dkt. 15. Debbie is incorrect. The ALJ found that because Debbie "might experience some distraction from her mental impairments, especially her psychogenic seizures, she might be off task up to 10%

had two to three seizures per week, R. 233, she did not seek treatment that frequently and
reported taking unprescribed marijuana drops to treat her seizures. [11] R. 20. The ALJ also noted
that Debbie told her providers throughout the record that she had seizures only two to three times
per month and that she drove, walked, and took care of family members.[12] R. 21, 26, 233–34.
The ALJ also considered the medical opinions of the state agency physicians, which suggested
limiting Debbie to light work.[13] R. 25.

Debbie also alleges that the ALJ "ignored significant evidence documenting [Debbie's]
ongoing [issues with her] upper extremities and his conclusion her symptoms resolved following
the carpal tunnel surgeries is not supported by substantial evidence." Pl.'s Br. at 54, Dkt. 15.
Specifically, Debbie notes that she had an additional injury to her right hand and fingers during a

---

of the workday and absent once per month." R. 26. The ALJ reasoned that Debbie does not need greater limitations
because she did not regularly seek treatment for her seizures and "was fairly active, which included driving, walking
for exercise every day, and taking care of various family members, suggesting her symptoms were not as bad as she
alleged." Id.

[11] Debbie alleges that the ALJ "failed to acknowledge that an individual with seizures does not seek
treatment every time a seizure occurs and only has to seek treatment when she is injured during the course of a
seizure or suffers a headache that will not resolve." Pl.'s Br. at 53, Dkt. 15. Debbie misconstrues the ALJ's
comments. The ALJ did not say that someone must go to the hospital regularly if they have seizures. Instead, the
ALJ noted that Debbie's claims that she had seizures as frequently as she did was not supported by the evidence of
record, as demonstrated by the activities she did, the lack of seizure activity she discussed with her providers, and
the minimal medical treatment she pursued. R. 20–21.

[12] Debbie makes a single sentence allegation that the ALJ did not properly consider the activities of daily
living. Debbie states, "The ALJ pointed to activities of daily living but did not acknowledge the extent to which
[Debbie] actually performed the activities and provided no explanation as to how those particular activities showed
she could persist through an eight hour workday." Pl.'s Br. at 55, Dkt. 15. Debbie does not cite to any case law and
does not point to any specific types of activities that the ALJ incorrectly analyzed. Debbie has done little more than
generically point to an issue she has with the ALJ's opinion. Without more, Debbie has not shown that the ALJ has
done anything incorrectly.

[13] Debbie argues that the ALJ "never made specific findings regarding whether [Debbie's] physical
impairments would result in a need to take breaks during the day from a physical standpoint or would result in an
unacceptable number of absences from work from a physical standpoint." Pl.'s Br. at 52, Dkt. 15. The purpose of the
RFC is to assess "an individual's ability to do sustained work-related physical and metal activities in a work setting
on a regular and continuing basis" meaning "8 hours a day, for 5 days a week, or an equivalent work schedule." See
20 C.F.R. §§ 404.1545(b); SSR 96-8, 1996 WL 374184, at *1-2. Here, the ALJ determined that Debbie could
perform sustained work activities in an ordinary work setting on a regular and continuing basis with certain
limitations and accommodations. The ALJ provided a narrative discussion explaining his conclusions and the
evidence supporting the RFC determination.

seizure in May 2020 and that in a June 2020 examination, Debbie's "little finger remained stiff, and range of motion was limited." Id. She also notes that her medical records document numbness, decreased strength, and impaired sensation in her hands and wrists following her carpal tunnel surgeries. Id. An ALJ "is not required to discuss all evidence in the record. . . . Indeed, to require an ALJ to refer to every physical observation recorded regarding a Social Security claimant in evaluating that claimant's alleged conditions would create an impracticable standard for agency review, and one out of keeping with the law of this circuit." Jeremy A.C. v. Kijakazi, No. 3:21-cv-00007, 2022 WL 3146317, at *8 (E.D. Va. June 3, 2022). A claimant must show that the ALJ used an improper legal standard, did not consider a relevant portion of the record, did not satisfy the duty of explanation, or the overwhelming weight of inconsistent evidence overcomes the very low substantial evidence standard. The Fourth Circuit has been clear that an ALJ's findings "as to any fact, if supported by substantial evidence, shall be conclusive." Hart v. Colvin, No. 5:169cv32, 2016 WL 8943299, at *3 (N.D.W. Va. Sept. 14, 2016) (quoting Walls v. Barnhart, 296 F. 3d 287, 290 (4th Cir. 2002)). Here, Debbie has done little more than point out evidence that the ALJ did not specifically note in his opinion.

Additionally, as it relates to the evidence about numbness, decreased strength, and impaired sensation, Debbie can only cite to a few instances in the record that detail these findings because she notably was discharged from occupational therapy after attending only two sessions and cancelling or failing to appear for nine other scheduled visits. Pl.'s Br. at 38, Dkt. 15 (citing to R. 2544). Debbie does not cite to any further mention of numbness, decreased strength, or impaired sensation and does not cite to any further treatment she sought or received. Without more, Debbie has not shown that the ALJ ignored or misrepresented the medical record.

Debbie also takes issue with the ALJ's evaluation of the state agency physicians' opinions. Debbie notes that "in support of his RFC findings, the ALJ found the medical opinions rendered by the state agency physicians persuasive; mostly persuasive; and then states the opinions are partially persuasive." Pl.'s Br. at 54, Dkt. 15. Debbie is correct that throughout his analysis of the state agency physicians' opinions, the ALJ differs in the persuasiveness that he assigns to the opinions. An ALJ is required to "articulate how [he or she] considered the medical opinions and prior administrative medical findings" in the claimant's record, including how persuasive he or she finds the opinions. 20 C.F.R. § 416.920c. Although the ALJ's exact language about the level of persuasiveness changed throughout the paragraph, it is important to acknowledge that the state agency physicians' findings are, for the most part, consistent with the ALJ's findings. Importantly, the ALJ still ascribed a level of persuasiveness to the state agency physicians' opinions regardless of the specific language that he used. The ALJ even added additional limitations to the state agency physicians' recommendations due to residual issues from carpal tunnel syndrome and poor peripheral vision. R. 25. Therefore, the ALJ's inconsistency in the level of persuasiveness assigned to the state agency physicians' opinions constitutes a harmless error. "Errors are harmless in Social Security cases when it is inconceivable that a different administrative conclusion would have been reached absent the error." Austin v. Astrue, No. 7:06cv00622, 2007 WL 3070601, at *6 (W.D. Va. Oct. 18, 2007 (Urbanski, J.). Here, Debbie does not point to what would have been different if the ALJ had used the same label for the persuasiveness of the state agency physicians' opinions but instead notes that the findings are "confusi[ng] and not clear." Pl.'s Br. at 54, Dkt. 15. It is inconceivable that the ALJ would have reached a different conclusion absent this error.

Contrary to Debbie's contentions, the ALJ provided a detailed summary of Debbie's physical impairments, medical records, testimony, and opinion evidence. The ALJ was required to create a narrative discussion that builds "an accurate and logical bridge from the evidence to his conclusion," which the ALJ did in his discussion of the medical and non-medical evidence, Debbie's alleged symptoms, and the medical opinions of record. This narrative discussion allows this court to see how the evidence in the record—both medical and non-medical—supports the RFC determination.  Because I was not "left to guess" at how the ALJ reached his RFC determination, I find that the ALJ's conclusion is supported by substantial evidence. Mascio, 780 F.3d at 637.

### D.  Subjective Allegations

Debbie argues that the ALJ's assessment of her allegations is not supported by substantial evidence. Debbie claims that the ALJ "failed to make any findings regarding the frequency of [Debbie's] seizures and headaches and instead just stated they did not occur as frequently as alleged by [Debbie]." Pl.'s Br. at 57, Dkt. 15. Debbie further argues that ALJ failed to qualify the extent to which Debbie performed daily activities. Id. at 57 –59. The Commissioner counters that the ALJ followed the regulatory evaluation process. Def.'s Br. at 20, Dkt. 19.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain.[14] Id. at *3, §§ 404.1529(b), 416.929(b). Second, the

---

[14] SSR 16-3p states that a claimant must provide "objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to

ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id.

Here, the ALJ found that Debbie's medically determinable impairments could reasonably be expected to cause the alleged symptoms. R. 19. However, the ALJ found that Debbie's statements concerning the intensity, persistence, and limiting effect of those symptoms were not consistent with the record. Id. Debbie first argues that the ALJ failed to make any findings regarding the frequency of her seizures and headaches. Pl.'s Br. at 57, Dkt. 15. The ALJ is not required to make such a finding. The ALJ repeatedly acknowledged the seizures that Debbie experienced and the injuries that she sometimes sustained because of the seizures. R. 20–21, 26. However, the ALJ noted that Debbie's testimony that she had two to three seizures per week that left her unable to function afterward is inconsistent to the two to three seizures *per month* that she relayed to her providers. R. 20–21. Debbie does not point to any particular case law or regulations to require the ALJ to make a specific conclusion regarding the frequency of her seizures.

Debbie also takes issue with the ALJ's findings on Debbie's carpal tunnel symptoms and argues that they are not supported by substantial evidence. Pl.'s Br. at 57, Dkt. 15. Attacking

---

produce [the] alleged symptoms." Id. Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques") and laboratory findings "shown by the use of medically acceptable laboratory diagnostic techniques." Id.

whether substantial evidence exists requires more than simply identifying medical records or statements that are inconsistent with the ALJ's findings. A claimant must show that the ALJ used an improper legal standard, did not consider a relevant portion of the record, did not satisfy the duty of explanation, or the overwhelming weight of inconsistent evidence overcomes the very low substantial evidence standard. The Fourth Circuit has been clear that an ALJ's findings "as to any fact, if supported by substantial evidence, shall be conclusive." Hart v. Colvin, No. 5:169cv32, 2016 WL 8943299, at *3 (N.D.W. Va. Sept. 14, 2016) (quoting Walls v. Barnhart, 296 F. 3d 287, 290 (4th Cir. 2002)). Here, Debbie has done no more than identify instances that she did not think were discussed as completely as she would like by the ALJ. Without more, Debbie has not shown that the ALJ ignored or misrepresented her subjective allegations.

Debbie also points to Brown v. Comm'r, 873 F.3d 251 (4th Cir. 2017) and similar cases to support her argument that "the ALJ failed to qualify the extent" to which Debbie performed her daily activities, such as traveling out of town and caring for family members. Pl.'s Br. at 57, Dkt. 15. Debbie further argues that the "daily activities referenced by the ALJ are not performed on a sustained basis commiserate with substantial gainful work activity and consequently, do not establish [Debbie] can sustain a typical 40-hour workweek." Id. at 58. Debbie emphasizes function reports from October 30, 2019 and July 6, 2020 which state she cannot cook due to unsteadiness on her feet and weakness in her hands and needs help and frequent breaks to do cleaning and laundry. Id. at 57–58. Debbie also points specifically to the July function report which notes that she is unable to sit or stand for periods of time and does better when lying down. Id. at 58.

The ALJ repeatedly acknowledged Debbie's severe physical and mental impairments, including her seizures, headaches, carpal tunnel syndrome, loss of vision, obesity, depression,

and anxiety. R. 19–24. The ALJ also acknowledged her limitations in concentration, persistence, and pace, and in interacting with others throughout his evaluation of the medical record. R. 16–17, 23–24. Further, unlike in <u>Brown</u>, the ALJ pointed to more than Debbie's daily activities to discount her subjective allegations. [15] Beyond the activities of daily living, the ALJ noted that medical evidence was inconsistent with Debbie's allegations about the extent of her impairments. R. 19. Debbie's allegations of disability were also inconsistent with the conclusions of the state agency doctors, who found that Debbie could participate in light work. R. 25. Finally, the ALJ may properly rely on evidence regarding a plaintiff's routine, non-work activities in rejecting a claim of disability. <u>See</u> <u>Johnson v. Barnhart</u>, 434 F.3d 650, 659 (4th Cir. 2005).

It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and her ability to work.  <u>See</u> <u>Smith v. Chater</u>, 99 F.3d 635, 638 (4th Cir. 1996); <u>see also</u> <u>Shively v. Heckler</u>, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). The ALJ's opinion was thorough and applied the proper legal standard, and I will not re-weigh the evidence. Accordingly, I conclude that the ALJ supported his analysis of Debbie's subjective complaints with substantial evidence, and that Debbie is capable of performing work at the level stated in the ALJ's opinion.

## CONCLUSION

For the foregoing reasons, an order will be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the Commissioner, **DENYING** Debbie's

---

[15] Also, unlike in <u>Brown</u>, the ALJ here did not fail to consider any doctor's opinions, or wrongly credit a psychiatric medical expert's testimony over the "consistent opinions of [five] treating and examining sources" who found disabling physical limitations. <u>Brown</u>, 873 F.3d at 266.

motion for summary judgment and **DISMISSING** this case from the Court's docket.

Entered:  June 20, 2023

*Robert S. Ballou*

Robert S. Ballou
United States District Judge